**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARIA L. SHUPE,<br><br>    Plaintiff,<br><br>vs.<br><br>CRICKET COMMUNICATIONS INC.,<br><br>    Defendant. | No. CIV 12-634-TUC-CKJ<br><br>**ORDER** |

Pending before the Court are the Motion to Dismiss and Compel Arbitration (Doc. 4) filed by Defendant Cricket Communications Inc. ("Cricket"), the Motion for Reasonable Accommodations (Doc. 6) filed by Plaintiff Maria L. Shupe ("Shupe"), and the Motion for Leave to Filed Revised Amended Complaint (Doc. 7) filed by Shupe. Shupe has lodged a proposed Revised Amended Complaint.

I. *Factual and Procedural History*

Shupe alleges she purchased a cell phone from Cricket in the latter part of 2009. Cricket asserts that Shupe was provided with a copy of Cricket's Terms & Conditions of Service ("Terms and Conditions") in the packaging of her cell phone and the Terms were available to Shupe on Cricket's website. Shupe has not disputed this assertion. The Terms and Conditions state, *inter alia*:

> 1.(a) **This is An Important Agreement Regarding the Services We Provide to You.  PLEASE READ THESE TERMS AND CONDITIONS CAREFULLY. These Terms and Conditions of Service constitute an agreement ("Agreement") between you and the provider of your Cricket service and contain an arbitration clause and other clauses which may affect your legal rights.** . . . Because these Terms and Conditions of Service may change from time to time, please visit us at our

official website (www.mycricket.com) or visit one of our retail stores for the most current version.

**(b) IMPORTANT: WHEN YOU START SERVICE OR USE THE SERVICE BY, FOR EXAMPLE, PLACING A CALL, SENDING A MESSAGE OR TRANSMITTING DATA ON THE CRICKET WIRELESS SYSTEM OR ANOTHER SYSTEM THAT'S AGREED TO CARRY OUR SERVICES, YOU INDICATE YOUR ACCEPTANCE OF THIS AGREEMENT. IN ADDITION, EACH TIME YOU PAY FOR SERVICE FROM US, YOU CONFIRM YOUR ACCEPTANCE OF THIS AGREEMENT.  IF YOU DO NOT WANT TO ACCEPT THIS AGREEMENT, DO NOT START SERVICE OR USE THE SERVICE AND RETURN YOUR WIRELESS DEVICE, UNUSED AND WITH THE ORIGINAL RECEIPT AND ALL PACKAGING AND ACCESSORIES, TO THE STORE WHERE PURCHASED WITHIN THE RETURN PERIOD SET BY THAT STORE FOR A REFUND.**

20.  Arbitration; Dispute Resolution

(a) PLEASE READ THIS SECTION CAREFULLY.  ARBITRATION MAY LIMIT RIGHTS YOU MAY HAVE AND PROVIDES FOR RESOLUTION OF MOST DISPUTES THROUGH ARBITRATION, ARBITRATION IS DIFFERENT FROM COURT; THE RULES, INCLUDING DISCOVERY, ARE DIFFERENT AND NO JUDGE OR JURY IS PRESENT AT AN ARBITRATION.   THE AWARD IS FINAL AND BINDING AND SUBJECT ONLY TO VERY LIMITED REVIEW BY A COURT. . .

(b)  You may reject this arbitration clause by sending us a rejection notice ("Rejection Notice" within sixty (60) days after the date of your phone activation or our disclosure of this section to you.  Any Rejection Notice must include my name, address, Cricket telephone number and must be sent to:  Cricket Communications, Inc., P.O. Box 4956, Englewood, Colorado  80155-4956.

(c) Any past, present or future claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents, successors or assigns of the other, arising from or relating in any way to this Agreement or Services provided to you under this Agreement, including (without limitation) statutory, tort and contract Claims and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved, upon the election by you or us, by binding arbitration. . . .  The party filing arbitration must choose one of the following three arbitration administrators:   National Arbitration Forum; American Arbitration Association; or JAMS.  These administrators are independent from us, and you must follow their rules and procedures for initiating and pursuing arbitration. If you initiate the arbitration, you must also notify us in writing at the address set forth in the "Notices and Contact" section above.  If we initiate the arbitration, we will notify you in writing at your then current billing address and send you a text message or (if your account is closed) the last address at which we contacted you. Any arbitration hearing that you attend will be held at a place chosen by the arbitrator or arbitration administrator at the time the claim is filed.  We agree that we will not elect to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any; however, if that Claim is transferred or appealed to a different court, we reserve our right to elect arbitration.   Unless otherwise provided by applicable law, neither party has the right to bring a Claim or other legal action under these Terms and Conditions more than two (2) years after the cause of action arose.

1  Motion to Dismiss and Compel Arbitration (Doc. 4), Ex. 1.

2  Shupe alleges that the number assigned to the cell phone was placed on the national
3  do not call registry ("DNCR").

4  Shupe asserts that, after Cricket began to text message her cell phone, Shupe wrote
5  Cricket a letter informing Cricket to immediately stop sending the text messages. Shupe
6  alleges Cricket failed to stop sending text messages until mid-2010. Shupe alleges Cricket
7  then terminated Shupe's phone service without legal reason or notice to Shupe.

8  On August 24, 2012, Shupe filed a Complaint against Cricket.[1] On September 4,
9  2012, Shupe filed a (First) Amended Complaint ("FAC").[2] Shupe alleges claims of a
10 violation of the Telephone Consumer Protection Act ("TCPA"), a violation of A.R.S. § 44-
11 1282, fraud in factum, invasion of privacy (intrusion upon seclusion), retaliation, fraud in the
12 inducement, and harassment against Cricket.

13 On September 21, 2012, Cricket filed a Motion to Dismiss for Lack of Jurisdiction
14 and Compel Arbitration. A response and a reply have been filed.

15 On September 25, 2012, Shupe filed a Motion for Leave to File Revised Amended
16 Complaint. The Court will refer to Shupe's Revised Amended Complaint as a Second
17 Amended Complaint ("SAC"). Shupe has lodged a proposed SAC. The SAC removes the
18 claim for fraud in factum and requests attorney fees and costs. A response and reply have
19 been filed.

---

[1] Cricket asserts that Richard Shupe ("Mr. Shupe"), the husband of Shupe has previously filed a lawsuit against Cricket in the state court system. Cricket's Motion to Compel Arbitration, with Mr. Shupe being a third party beneficiary of the Terms and Conditions, was granted in the state court.

[2] *See* Fed.R.Civ.P. 15(a)(1) ("A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.")

II. *Motion for Reasonable Accommodations*

Shupe requests that any hearings be scheduled early on Tuesdays or Wednesdays. To the extent the Court's calendar will permit such scheduling, the Court will grant the request.

III. *Motion for Leave to File Second Amended Complaint*

Shupe seeks leave to amend her complaint and has submitted a proposed SAC. In determining whether an amended pleading should be permitted, "[f]ive factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether Shupe has previously amended [her] complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Shupe seeks to remove her claim for fraud in factum, requests attorney fees and costs, and includes additional allegations in the fraud in the inducement claim.[3] Although Shupe has previously amended her complaint, *see Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (failure to cure deficiencies by previous amendments is factor to be considered), the Court finds Shupe is not acting in bad faith. Additionally, Shupe has timely requested the amendment and the Court does not find there is any undue delay. Indeed, discovery has not begun and the proposed SAC does not affect this Court's ability to consider the pending Motion to Dismiss for Lack of Jurisdiction and Compel Arbitration.

Additionally, the Court considers that "generally a party will not be deemed prejudiced by an amended pleading if the amendment relates to the same conduct, transaction, or occurrence alleged in the original pleading, or if the opposing party is otherwise aware of the facts contained in the amended pleading." 61A Am. Jur. 2d Pleading § 724, *citations omitted*. The Court finds the proposed amendments as set forth in the SAC

---

[3]Cricket asserts that Shupe's FAC does not include a fraud in the inducement claim. However, Shupe's FAC does include a fraud in the inducement claim. *See* Doc. 3, p. 7.

- 4 -

involves conduct related to the conduct stated in the FAC complaint. The Court finds Cricket will not be prejudiced by the proposed SAC.

The Court also considers whether the proposed amendments would be futile. Shupe's removal of the fraud in factum claim allows Shupe to streamline her claims. However, the same effect can be reached with Cricket's Motion to Dismiss. Additionally, as Shupe is acting *pro se*, she is not entitled to an award of attorney fees. *See Kay v. Ehrler*, 499 U.S. 432 (1991). This is not to say, however, that Shupe could not obtain the services of counsel in the future. However, as the Motion to Dismiss and Compel Arbitration is well-taken, *see discussion infra*, the Court finds the proposed amendment futile. Lastly, the Court has not found any authority that requires a request for costs to be pleaded in a complaint. *See e.g. United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762 (5th Cir. 1996) (distinguishing between attorney fees and costs). In other words, Shupe's requested amendment to include a request for costs does not add anything to the claims against Cricket.

In reviewing Shupe's proposed amendments to her fraud in the inducement claim, the Court recognizes that her amendments are conclusory. However, these claims address the merits of Cricket's Motion to Dismiss and Compel Arbitration. The Court finds it appropriate to allow Shupe to make these amendments. Because the Court is permitting these amendments, the Court will permit all requested amendments. The Court will direct the Clerk of Court to file the lodged SAC.

IV. *Status of Motion to Dismiss and Compel Arbitration*

Generally, "an amended complaint supercedes the original complaint and renders it without legal effect . . ." *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012); *see also Valadez–Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir.2011) ("[I]t is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *quotation marks omitted*. This principle is often applied to motions to dismiss a complaint that has since been superseded and deny such motions as moot. *See,*

- 5 -

*e.g., Wagner v. Choice Home Lending*, 266 F.R.D. 354, 360 (D.Ariz. 2009) ("As both motions pertain to Plaintiff's original complaint and Plaintiff has since filed an Amended Complaint, both Motions are now moot."); *Garibaldi v. JPMorgan Chase Bank, N.A.*, No. 109–CV–00574–AWI–GSA, 2009 WL 1531565, at *1 (E.D.Cal. May 28, 2009) ("The amended complaint has superseded the original complaint in its entirety, and the court is now proceeding with the amended complaint. Thus, Defendants' motion addressing the original complaint is now moot."), *internal citations omitted*; *see also* 6 Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1476 (3d ed. 2012) ("[I]f the first complaint is considered superseded by the amendment, the court is not required to dismiss the suit when a motion points up [sic] the weaknesses of the earlier pleading").

Where an amended complaint suffers from the same deficiencies as an original complaint, however, it is within the court's discretion to consider a motion based on the original complaint as if it were based on the amended complaint. *See, e.g., Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 641 n. 1 (E.D.Pa.1999) ("Since Counts IV through XII of the amended complaint suffer from the same deficiencies that are addressed in defendants' motion to dismiss, the court will allow the motion to dismiss these counts to be considered as addressing the amended complaint."); *Sun Co., Inc. ® & M) v. Badger Design & Constructors, Inc.*, 939 F.Supp. 365, 367 (E.D.Pa.1996) ("[T]he contentions presented in Defendants' initial Motion to Dismiss are germane to the Amended Complaint because it failed to cure a majority of the deficiencies initially alleged."); *see also* William W. Schwarzer et. al., Federal Civil Procedure Before Trial, ¶¶ 9:262–63.1 (The Rutter Group 2012) ("[T]he court will usually treat the motion to dismiss as mooted. It may, however, proceed with the motion if the amendment does not cure the defect.").

The SAC does not cure the issues presented in the Motion to Dismiss and Compel Arbitration. The Court finds consideration of the Motion to Dismiss and Compel Arbitration to be appropriate.

V. *Arbitration*

The Federal Arbitration Act ("FAA") was enacted to "overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA reverses "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Adams*, 279 F.3d at 892, *citing Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (the FAA mandates district courts to direct parties to arbitration on issues as to which arbitration has been agreed upon). When evaluating the validity of an arbitration agreement, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Furthermore, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Shupe is, in effect, asserting that the Terms and Conditions, including the provision regarding arbitration, is not enforceable because it is procedurally unconscionable – that the agreement between the parties, as set forth in the Terms and Conditions is the result of fraud in the inducement.

A. *Procedural Unconscionability – Fraud in the Inducement*

While Arizona law favors arbitration, "it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *Southern Cal. Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, 51, 977 P.2d 769, 773 (1999).

Arizona's statutory provision on unconscionability provides:

> A. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> B. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

A.R.S. § 47-2302, As previously stated, the general contract defense of unconscionability may operate to invalidate arbitration agreements. *Adams*, 279 F.3d at 892. However, "[c]ourts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain[.]" *Nelson v. Rice*, 198 Ariz. 563, 568, 12 P.3d 238, 243 (App. 2000), *quoting Pacific Am. Leasing*, 152 Ariz. 96, 103, 730 P.2d 273, 280 (App. 1986).

"Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se." *Nelson*, 198 Ariz. at 567, 12 P.3d at 242, *quoting Phoenix Baptist Hosp. & Medical Ctr., Inc. v. Aiken*, 179 Ariz. 289, 283, 877 P.2d 1345, 1349 (App. 1994). The Supreme Court of Arizona has recognized that, while contracts may have elements of both procedural and substantive unconscionability, "a claim of unconscionability can be established with a showing of substantive unconscionability alone[.]" *Maxwell*, 184 Ariz. at 90, 907 P..2d at 59.

Procedural unconscionability is concerned with unfair surprise; courts examine factors influencing the "the real and voluntary meeting of the minds of the contracting party: age,

- 8 -

1 education, intelligence, business acumen and experience, relative bargaining power, who
2 drafted the contract, whether the terms were explained to the weaker party, whether
3 alterations in the printed terms were possible [and] whether there were alternative sources
4 of supply of the goods in question." *Maxwell v. Fidelity Fin. Servs.*, 184 Ariz. 82, 89, 907
5 P.2d 51, 58 (1995), *quoting Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich.
6 1976).

7 In this case, the Terms and Conditions is a form contract prepared by Cricket. *See*
8 *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 376, 35 P.2d 426, 430 (App. 2001) (the
9 ability to negotiate negates any finding of adhesiveness). The "take it or leave it" nature of
10 an agreement may lead to a conclusion that the agreement is an adhesive contract. However,
11 a contract of adhesion is fully enforceable unless legislative or judicial rules render it
12 unenforceable. *Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016. The Court, therefore, must
13 consider whether the agreement is unconscionable.

14 In this case, Shupe does not assert that she had not been provided with the Terms and
15 Conditions, including the agreement to arbitration, or that she was not aware of the contents
16 of the Terms and Conditions. Moreover, the arbitration clause specifically afforded Shupe
17 with an opportunity to reject the arbitration clause. In light of the rejection provision of the
18 arbitration clause, the Court finds it was reasonable for each party to expect any disputes
19 between the parties to be subject to arbitration. *See e.g., Harrington v. Pulte Home Corp.*,
20 211 Ariz. 241, 247, 119 P.3d 1044, 1050 (App. 2005).

21 Although Shupe has asserted that Cricket advertisements included statements that
22 there were "no contracts," Shupe has not provided any specific allegations regarding such
23 advertisements (e.g., time frames of when she heard/saw advertisements or reliance on
24 provisions of the advertisements). Indeed, Shupe makes no statement as to why any reliance
25 on any such advertisements should carry more weight than Shupe's receipt of the Terms and
26 Conditions that stated they constituted an agreement Shupe and the provider of her Cricket
27 service, advised Shupe that when she started the service or the use of the service that she was

28

- 9 -

1 accepting the Terms and Conditions, advised Shupe of the procedure if she did not agree to
2 the Terms and Services, included an arbitration clause, and included a method by which
3 Shupe could reject the arbitration agreement.

4 There is no evidence or allegations before the Court that Shupe did not receive the
5 Terms and Conditions or that she did not have a chance to read the Terms and Conditions,
6 including the arbitration agreement. Additionally, Shupe does not assert that the arbitration
7 agreement was buried in the Terms and Conditions (indeed, the first paragraph of the Terms
8 and Conditions states an arbitration clause is included), the Terms and Conditions were
9 illegible, the Terms and Conditions were bizarre or oppressive, the Terms and Conditions
10 were contrary to prior negotiations between Cricket and Shupe, or that Cricket had any
11 reason to believe that Shupe would not have accepted the Terms and Conditions if Shupe
12 knew the Terms and Conditions contained any particular provision. *See Darner*, 140 Ariz.
13 383, 391-392, 682 P.2d 388, 396-97 (1984) (discussing factors that could violate reasonable
14 expectations).

15 The Court finds that any fraud in the inducement does not constitute procedural
16 unconscionability. The arbitration agreement between the parties, therefore, is enforceable.
17 Dismissal of this action, therefore, is appropriate. *DeGroff v. MascoTech Forming*
18 *Technologies-Fort Wayne, Inc.*, 179 F. Supp. 2d 896, 899, n. 2 (N.D. Ind. 2001) (motion to
19 compel arbitration may be properly brought pursuant to Rule 12(b)(1) or 12(b)(6)).

20 Accordingly, IT IS ORDERED:

21 1. Shupe's Motion for Reasonable Accommodations (Doc. 6) is GRANTED.

22 2. Shupe's Motion for Leave to Filed Revised Amended Complaint (Doc. 7) is
23 GRANTED. The Clerk of Court shall file the lodged proposed Revised Amended Complaint
24 (Doc. 8) as a Second Amended Complaint.

25 3. Cricket's Motion to Dismiss Complaint and to Compel Arbitration (Doc. 4) is
26 GRANTED.

27 4. Shupe may pursue her claims against Cricket pursuant to the terms of the

28

1 arbitration clause of the Terms and Conditions.

2     5.    This matter is DISMISSED WITHOUT PREJUDICE.

3     6.    The Clerk of the Court shall enter judgment and shall close its file in this matter.

DATED this 4th day of January, 2013.

_____
Cindy K. Jorgenson
United States District Judge